IN THE UNITED STATES DISTRICT COURTs
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANTWON RUSSELL, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21 CV 4908 |
| | ) | |
| v. | ) | Judge Robert W. Gettleman |
| | ) | |
| VILLAGE OF DOLTON and RILEY ROGERS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Antwon Russell brings a three-count complaint against defendants Village of Dolton and Riley Rogers ("Rogers") (collectively, "defendants"), which alleges that plaintiff was not hired by the Village of Dolton as a lateral hire police officer because of his political activities and candidacy for mayor of the Village of Burnham. Count 1 alleges unlawful political retaliation pursuant to 42 U.S.C. § 1983; Count 2 alleges violations of plaintiff's First Amendment rights by political retaliation; and Count 3 alleges violations of plaintiff's due process under the Equal Protection Clause of the Fourteenth Amendment. On May 2, 2023, defendants moved for summary judgment on all counts pursuant to Federal Rule of Civil Procedure 56 (Doc. 50). For the reasons discussed below, the court grants defendants' motion on all counts.

**BACKGROUND**

Plaintiff's claims arise from his failure to be hired as a lateral hire police officer for the Dolton Police Department after applying for the position twice, on or about July 2, 2019, and September 8, 2020. Plaintiff filed this complaint on September 16, 2021.

In 2019, the Village of Dolton began recruiting lateral hire police officers because it was

1

short-staffed.[1] When individuals submit applications using the lateral hire process rather than the new entry process, applicants are required to have previous experience and qualifications as set forth by Village Ordinance No. 15-015. Lateral hire applicants must submit an application packet, which the police department command staff reviews for issues such as lapsed Illinois state certification, driver's license, or other law enforcement credentials. If there are no issues with the application, the command staff interviews the applicant. After the interview, the police department conducts a background investigation, and if the applicant passes the background check, they undergo psychological and polygraph examinations.

Sergeant Eric Price ("Price") and Deputy Chief Lewis Lacey ("Lacey") were involved in the hiring process in 2019. Price used a checklist to verify that applications were complete and up-to-date, and evaluated whether an applicant's employment history showed any patterns. Price trained Lacey to review lateral hire applications, and Lacey testified that he also reviewed applications to see if they were complete using the checklist. The department stored application packets in manila envelopes, and Price and Lacey stated that they made notes on applicants' envelopes about their concerns during the review process.

Plaintiff submitted his first application packet for the lateral hire police officer position at the Dolton Police Department on July 2, 2019, and Price and Lacey reviewed plaintiff's application on or about July 30, 2019. According to Price, he determined that plaintiff should not advance to the interview phase of the hiring process because Price was concerned about "regressive movement" in plaintiff's employment. Specifically, Price testified in his deposition

---

[1] The court evaluates the relevant facts from the parties' Local Rule 56.1 statements. Where plaintiff disagrees with defendants' statement of facts because certain facts are based on testimony that plaintiff views as "self-serving and uncorroborated," the court takes plaintiff's disagreement to indicate facts that may be in genuine dispute. At the outset, the court notes that the same or similar testimony from multiple individuals, even if self-serving, is not uncorroborated, and the fact that sworn testimony is self-serving does not preclude summary judgment if plaintiff fails to provide affirmative contrary evidence to support his claims.

that he was concerned because plaintiff left his employment as a police officer at the Village of Burnham for employment at the Village of Dixmoor, which is a smaller department with only part-time employment for officers. Plaintiff was employed at Dixmoor for a short period of time before resigning, and then he took another part-time position with an even smaller department at the Village of Phoenix. Price testified about his concern that plaintiff had resigned multiple times, and that he noted his concerns about plaintiff's application on the corresponding manila envelope. Conversely, Lacey testified that he noted on plaintiff's envelope that the application was "not complete" and indicated that he was "unsure about certification" next to the checklist item for "photocopy of state certifications." Lacey and Price's testimony is supported by a photocopy of the envelope and application checklist, although Price testified that he did not find that plaintiff's certification was uncertain or incomplete.

After they reviewed plaintiff's application, Price testified that he and Lacey had a conversation with Chief Ernest Mobley ("Mobley") about the application within a week of July 30, 2019, and they determined that plaintiff would not advance to the interview phase, although Mobley testified that he did not specifically recall Price mentioning to him that plaintiff was unqualified for lateral hire because of plaintiff's regressive movement between stations. In preparation for this lawsuit, Price created a chart of all applicants (excluding plaintiff) for lateral hire police officer positions in 2019 and 2020, which lists the date of application and the reason that the applicant did not move forward in the interview process. The chart demonstrates that several applicants in 2019 did not receive an interview, including applicants who submitted an incomplete application or excessive movement among positions.

Plaintiff submitted a second application to become a lateral hire police officer at the Village of Dolton on September 8, 2020. Mobley and Price reviewed this application and passed

3

plaintiff on to the interview phase. Price, Mobley, and Deputy Chief Raymond McInerney ("McInerney") interviewed plaintiff and discussed plaintiff's qualifications, his previous employment, and how plaintiff learned about the lateral hire position at Village of Dolton. According to Price, when asked why he wanted a position at the Dolton Police Department, plaintiff failed to give a convincing answer. The parties dispute whether plaintiff stated that he preferred being a detective (his position at the Harvey Police Department) to being a patrol officer, which was the position available at Village of Dolton. The parties also dispute whether plaintiff's compensation at Harvey was similar to his prospective compensation at Dolton, which plaintiff believed was around $30,000 higher with pay and benefits.

Price then performed plaintiff's background check. According to Price, he did not initially make the connection that plaintiff had previously applied, but plaintiff stated in his cover letter that plaintiff was a "finalist" when he first applied, although that was not true. Price started the background check by comparing plaintiff's 2019 application to his 2020 application, which were inconsistent. On his 2020 application, plaintiff stated that he worked for the Phoenix Police Department from February 2019 through July 2019, but on his 2019 application, plaintiff stated that he worked for the Village of Phoenix starting in 2017. Moreover, on his 2019 application, plaintiff listed his employment at the Dixmoor Police Department beginning in April 2018 until April 2019, but his 2020 application did not include his employment at Dixmoor at all. According to Price, these discrepancies were part of the reason that Price did not initially view excessive movement as a red flag in plaintiff's 2020 application, in addition to plaintiff's employment at the Harvey Police Department at that time.

Price also contacted plaintiff's previous employers during his background investigation. When Price contacted someone at the Burnham Police Department, he learned that plaintiff

started working at Burnham in 2013 but was terminated. After filing a lawsuit against the Village of Burnham, plaintiff was rehired. Plaintiff was later terminated a second time, although according to plaintiff, he resigned in lieu of termination after he filed another lawsuit against the Village of Burnham. When Price contacted someone at the Village of Dixmoor, he received the feedback that plaintiff was not a "go getter." As noted above, plaintiff resigned from Dixmoor, which plaintiff explains was due to his rehiring by the Village of Burnham.

On or about October 1, 2020, Price compiled his findings from investigating plaintiff's background into a report, which he shared with Mobley and McInerney. The report states that plaintiff was "a high risk," based on his dishonesty and deceptiveness regarding the employment information listed in his application, excessive movement to smaller departments (purportedly indicative of loyalty), past issues at other departments, and "lack of a convincing reason" to leave an assignment he preferred for one that he did not. Price testified that he recommended that plaintiff not move forward with the hiring process, and Mobley and McInerney agreed.

According to plaintiff, however, he was not given an interview in 2019 or hired in 2020 because defendant Rogers, as Mayor of Dolton, directed Price and Mobley to not hire plaintiff for political reasons. Plaintiff states that he was a fully qualified, experienced police officer with all current certifications and credentials from the State of Illinois when he submitted his applications in 2019 and 2020. Moreover, plaintiff claims that he was "likely more experienced than most, if not all of the recently hired officers selected by Dolton in 2019 and 2020."

Rogers's alleged political motivation to deny plaintiff's employment was plaintiff's political activities against Robert Polk ("Polk"), Mayor of Burnham, whom plaintiff claims was Rogers's political ally.[2] Plaintiff ran for Village Trustee for the Village of Burnham in 2019, and

---

[2] The Village of Burnham, City of Harvey, and Village of Dolton are all in Thornton Township.

he lost the election on April 2, 2019. According to plaintiff, he decided to run for Mayor of Burnham on the day that he lost the election. However, Price, Lacey, and Mobley all state in sworn affidavits that they did not know that plaintiff was a candidate for Mayor of Burnham, or intended to become a candidate, when they reviewed his 2019 or 2020 applications. They all state that they did not learn about plaintiff's political activities until plaintiff filed the instant lawsuit in September 2021.

Further, according to Mobley, Lacey, and Rogers, Rogers (Mayor of Dolton) did not give input or influence the hiring process for any prospective police officer in 2019 or 2020. While defendants do not dispute that Rogers appointed the Chief of Police and Deputy Chief, Rogers states in his affidavit that he allowed the police chief to control the hiring process for officers. Once the police chief made his selections, he sent the names of selected candidates to Rogers and the Village Clerk to be sworn in. Mobley testified that while he was the police chief, Rogers did not have any input on which applicants were hired as police officers.

More specifically, Rogers was not involved in reviewing plaintiff's applications according to Price, Mobley, Lacey, and Rogers. Rogers states in his affidavit that he never asked anyone at the Dolton Police Department to pull plaintiff's application, and he was neither notified by anyone at the Dolton Police Department that plaintiff applied for a position, nor involved in the decision to deny plaintiff a position. Mobley testified that Rogers never told him not to hire plaintiff or to pull plaintiff's application; Price testified that he never had a conversation with Rogers prior to reviewing plaintiff's application; and Lacey testified that he was not aware of Rogers making any recommendations regarding any applicant.

Plaintiff provides an alternative set of facts. According to plaintiff, his longtime friend, Sammie Young ("Young"), introduced plaintiff to Rogers after a Village of Dolton Board of

6

Trustees meeting on July 15, 2019. According to Young, Young knew Rogers because he assisted Rogers in his efforts to take control over the Dolton Board of Trustees in 2019, and Rogers appointed Young as Director/Manager of the Water Department of the Village of Dolton as a reward. Both plaintiff and Young testified that when Young introduced plaintiff to Rogers and informed him that plaintiff had applied to the Dolton Police Department, the mayor said something like, "I'll have it pulled, and I'll give it to the chief." They took this to mean that Rogers would have plaintiff's application pulled for review and hire. Young testified that he believes that Rogers made the hiring decisions regarding the Dolton Police Department "[b]ecause he's controlling and he wants to be the mayor and the chief of police."[3]

Plaintiff testified that after his conversation with Young and Rogers, he talked with Mobley on the telephone, and Mobley stated, "The mayor told me to pull your application and do your background. I know you had some issues in Burnham. What's going on[?] What's the status on Burnham? I just want to know so I can let the mayor know." In response, plaintiff explained his political ambitions in Burnham. According to plaintiff, plaintiff stated that, "I know I might be running for mayor soon, but right now I ran for trustee. We had a lawsuit. I got fired. We had two lawsuits. I got fired a second time because they sent me back the first time." Mobley testified that he did not recall this conversation with plaintiff.

According to plaintiff, he publicly announced his mayoral candidacy in April 2020, but he told "multiple constituents in the community" that he was running for mayor prior to his public announcement. Plaintiff testified that in February 2020, Christopher Clark ("Clark"),

---

[3] Young also testified that he believed that plaintiff did not get hired at the Village of Dolton because "the mayor knew me and Antwon Russell [were] friends, and once the mayor, Riley Rogers, terminated me, then Antwon didn't get that job." Young testified that he talked with plaintiff about plaintiff's rejected application, and Young said that it was not "hard to figure it out" because Rogers knew about plaintiff's relationship with Young, and "anything [Rogers] can do to think he getting back at me, he is going to take it out on anybody that's affiliated with me."

Mayor of Harvey, told him, "I got a call from Mayor Polk telling me don't trust you. You shouldn't be in Harvey and to get rid of you as soon as I can because you're going to sue us." Plaintiff also testified that prior to September 2020, Polk personally warned plaintiff that, "you know, running against a mayor means you're running against all the mayors in Thornton Township. Just remember that when you're applying for jobs." Moreover, according to plaintiff, on June 28, 2022, when plaintiff stated to Rogers that "[it's] because of you that I was not hired in Dolton, that's what this lawsuit is about, not you personally," Rogers responded by stating, "it is about me, [it's] my reputation," and "Polk's my guy, and I am loyal."

Plaintiff hired John C. Franklin ("Franklin") as an expert witness to offer his opinion on the professional criteria that should be considered when evaluating and selecting prospective applicants for lateral hire police officer positions in small and medium sized municipal departments in the south suburbs of Chicago. Rogers appointed Franklin as police chief for the Village of Dolton from May 2013 through May 2015. According to Franklin, Price's reasons for not selecting plaintiff for an interview in 2019 do not "make[ ] sense and [are] not consistent with the objective professional credentials that are routinely assessed and considered when evaluating a prospective lateral hire police officer," and Price's reasons and explanations "were clearly subjective." Franklin determined that an officer leaving a full-time position for a part-time position, or to a smaller department, is not necessarily a red flag because officers move as work conditions change, including leadership, pay, and benefits. Moreover, Franklin stated that he could not "envision a scenario where Mayor Rogers was not personally involved with or not being consulted with the selection of any police officer hired by the Dolton Police Department." According to Franklin, when Franklin was police chief, Rogers personally hired at least one lateral hire police officer.

8

## LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden, and the court must view all facts in the light most favorable to the nonmovant and draw all reasonable inferences in their favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). But the nonmovant must do more than raise "some metaphysical doubt as to the material facts." Id. at 586. Rather, the nonmovant "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## DISCUSSION

Defendants have moved for summary judgment on all counts because plaintiff has failed to provide affirmative evidence on which a reasonable jury could find in plaintiff's favor. Defendants first argue that they are entitled to summary judgment on Counts 1 and 2 because plaintiff has failed to establish that his protected activity of running for mayoral office in the Village of Burnham was a motivating factor for defendants' hiring decisions.[4] Moreover, even if plaintiff could establish that his protected activity was a motivating factor, defendants argue that they would have made the same hiring decisions even if plaintiff was not a candidate for mayor. They also argue that they are entitled to summary judgment on Count 3 because it is an improper repackaging of Counts 1 and 2.

To establish a prima facie case of political discrimination under the First Amendment, a plaintiff must show: (1) that the plaintiff's conduct is constitutionally protected; (2) that the

---

[4] While plaintiff brings Counts 1 and 2 under different sources of law, plaintiff does not differentiate between the operative facts or elements of these claims or methods of proof, so the court's analysis is the same for both claims. See, e.g., Montgomery v. American Airlines, Inc., 626 F.3d 382, 389 (7th Cir. 2010).

9

plaintiff suffered a deprivation likely to deter free speech; and (3) that the protected conduct was at least a motivating factor in the defendant's actions. See Yahnke v. Kane Cty., 823 F.3d 1066, 1070 (7th Cir. 2016). If the plaintiff demonstrates that his protected activity was a motivating factor in the defendant's decision, the burden shifts to the defendant to show that the defendant would have made the same decision in the absence of the plaintiff's protected activity. See id. at 1071.

As a threshold matter, defendants argue that no reasonable jury could find that the defendants knew about his protected activity in the first place, much less that it motivated its decisions not to hire plaintiff.[5] They cite Stagman v. Ryan, 176 F.3d 986 (7th Cir. 1999), in which the Seventh Circuit held that the defendants were entitled to summary judgment on a retaliation claim when the plaintiff did not show that the defendants personally knew about the plaintiff's union-related activities when they terminated his employment. See id. at 1000–1001. The court emphasized that the plaintiff could not rely on "mere speculation and conjecture" to demonstrate the defendant's knowledge without evidence in the record. Id. at 1001.

Plaintiff acknowledges that he does not provide direct evidence to show that defendants knew about his campaign prior to their adverse employment decisions.[6] Mobley, Lacey, and Price all testified that they did not learn about plaintiff's candidacy for mayor until plaintiff filed this lawsuit in 2021. Instead, plaintiff argues that circumstantial evidence would allow a reasonable jury to conclude that there was a causal connection between plaintiff not being interviewed in 2019 and not hired in 2020, and defendants' awareness of plaintiff's political

---

[5] Defendants superficially assert that they are challenging whether plaintiff engaged in a protected political activity, as well as whether plaintiff experienced a deprivation that is likely to deter free speech, but they do not expand upon their assertions or further explain their arguments.

[6] When a plaintiff cannot provide direct evidence that his protected activity is causally related to an adverse employment action, he must use the burden-shifting method articulated in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). See Lalvani v. Cook Cnty., Illinois, 269 F.3d 785, 789 (7th Cir. 2001).

10

activity challenging the incumbent Mayor of Burnham.

In the instant case, viewing the evidence in plaintiff's favor, the court agrees with plaintiff that a reasonable jury could find that defendants knew about plaintiff's political activity prior to determining that he would not be hired in 2019 and 2020. As defendants note, it is not enough for plaintiff to show that they <u>could</u> or <u>should have known</u> about plaintiff's protected activity just because other community members were discussing it. See <u>Luckie v. Ameritech Corporation</u>, 389 F.3d 708, 715 (7th Cir. 2004). In July 2019, however, plaintiff testified that Mobley called him to inquire about "[w]hat's going on" in Burnham, and in response, plaintiff stated that he "might be running for mayor [of Burnham] soon," and ran for trustee "right now." According to plaintiff's testimony, Mobley asked about plaintiff's activities in Burnham to "let the mayor know." While there is no evidence that Mobley did, in fact, "let the mayor know" about plaintiff's political activities in Burnham, there is enough evidence to establish a genuine dispute whether both defendants knew about plaintiff's protected political activities prior to reviewing his applications in 2019 and 2020.

Defendants further argue that no reasonable jury could find in favor of plaintiff on Counts 1 and 2 because plaintiff fails to provide evidence to demonstrate that plaintiff's protected political activity was a motivating factor in defendants' hiring decisions in 2019 and 2020. Conversely, plaintiff argues he establishes a <u>prima facie</u> case of retaliation based on circumstantial evidence, such as suspicious timing. He emphasizes the Seventh Circuit's determination that timing is "often an important evidentiary ally of the plaintiff," and an adverse employment action that "follows close on the heels of protected expressions" can be sufficient. See <u>Lalvani v. Cook Cnty., Illinois</u>, 269 F.3d 785, 790 (7th Cir. 2001). Defendants counter that the fact that plaintiff's protected activity preceded defendants' adverse employment decision

11

does not establish causation by itself. See George v. Walker, 535 F.3d 535, 539 (7th Cir. 2008).

The court agrees with defendants that proximity alone is not enough, and that plaintiff has provided no evidence to demonstrate several aspects of his purported prima facie case.[7] For example, plaintiff provides no evidence to show that the Dolton Police Department failed to follow their established standard procedures for reviewing applications, or that Rogers had "complete control" over the process. While Franklin, whom plaintiff offers as an expert, determined that Price's reasons for not selecting plaintiff do not "make[] sense and [are] not consistent with the objective professional credentials that are routinely assessed and considered when evaluating a prospective lateral hire police officer," the court agrees with defendants that Franklin is not qualified as an expert pursuant to Federal Rule of Evidence 702, which allows experts to testify when their "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Franklin's expert report is largely based on personal beliefs that are not rooted in scientific, technical, or other specialized knowledge.

Even if the court accepted Franklin's report as expert testimony, Franklin does not state that Price, or another reviewer, deviated from their typical assessment procedure in plaintiff's case. In fact, the evidence suggests otherwise. Price's chart shows that it was the Dolton command staff's practice to screen out applicants with excessive movement and/or incomplete applications, and his chart is corroborated by his sworn testimony. Moreover, these applicants, like plaintiff, were rejected despite the Village's apparent need for experienced hires.

While plaintiff testified about his conversations with other mayors (Clark and Polk), his

---

[7] Other circumstantial evidence, according to plaintiff, includes the Dolton Police Department's failure to follow their established standard procedures, Rogers's complete control over the approval of new hires, plaintiff's experience and qualifications compared to the applicants selected for hire, and Dolton's ongoing need to hire experienced officers.

proffered evidence is inadmissible hearsay under Federal Rule of Evidence 804(c). As defendants note, plaintiff cannot rely on inadmissible hearsay to defeat summary judgment. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). Plaintiff's testimony about Polk's warning that "running against a mayor" would frustrate his job application process is inadmissible because he is using Polk's statement to demonstrate the truth of the matter asserted (i.e., that Polk communicated with the other mayors in Thornton Township to interfere with plaintiff's job applications based on his mayoral candidacy).[8] Similarly, plaintiff uses Clark's statement to demonstrate that Polk, plaintiff's political rival, fomented distrust against him among the mayors of Thornton Township, which interfered with his employment.[9] Because plaintiff does not provide admissible evidence of these conversations, he does not raise a genuine dispute about the Village's retaliatory motivation, which is necessary for plaintiff to establish a prima facie case against the Village.

Whether plaintiff has established a prima facie case against Rogers is a separate issue. Assuming that Rogers knew about plaintiff's protected political activity, plaintiff must prove that Rogers played a role in the lateral hiring process in the first place. Even if the court accepted Franklin's report, it is not enough for Franklin to opine that he could not "envision a scenario where Mayor Rogers was not personally involved with or not being consulted with the selection of any police officer hired by the Dolton Police Department." On the other hand, plaintiff testified that Rogers said to him and Young something to the effect of, "I'll have [your application] pulled, and I'll give it to the chief." Plaintiff's recollection of Rogers's statement does not prove that Rogers did in fact have plaintiff's application pulled and given to Mobley,

---

[8] According to plaintiff, Polk warned that, "you know, running against a mayor means you're running against all the mayors in Thornton Township. Just remember that when you're applying for jobs."
[9] According to plaintiff, Clark stated that, "I got a call from Mayor Polk telling me don't trust you. You shouldn't be in Harvey and to get rid of you as soon as I can because you're going to sue us."

but it is enough for a reasonable jury to determine that Rogers was involved in the hiring process.

The problem for plaintiff, however, is that he provides no admissible evidence that would allow a reasonable jury to conclude that his protected political activity motivated Rogers to reject his applications. If anything, assuming that Rogers did instruct Mobley to pull plaintiff's application, plaintiff provides no evidence to suggest that Rogers's input negatively impacted plaintiff's chance at employment. In fact, the evidence tends to suggest the opposite: that Rogers would have instructed the Dolton Police Department to handle plaintiff's application in a positive manner based on his positive relationship with Young at the time. The court consequently grants summary judgment in favor of defendants on Counts 1 and 2.

Moreover, even if the court determined that there was a genuine dispute whether plaintiff succeeded in establishing a prima facie case of political retaliation against defendants, the court would still grant summary judgment in favor of defendants on Counts 1 and 2, because there is no genuine dispute whether defendants would have made the same decision in the absence of plaintiff's protected political activity. See Bisluk v. Hamer, 800 F.3d 928, 934 (7th Cir. 2015). Defendants argue that Lacey did not recommend plaintiff for an interview in 2019 because plaintiff's application packet was not complete, and Price had concerns with plaintiff's regressive employment history and multiple resignations. Further in 2020, defendants argue that plaintiff was not hired because he failed to convince his interviewers that he was motivated to leave his current position at Harvey, and because of inconsistencies and other negative feedback in his background check.

The court agrees with defendants that a reasonable jury could not find in plaintiff's favor on this issue. While defendants' use of arguably subjective criteria to evaluate lateral hire applicants may leave it vulnerable to a finding of discrimination, Sattar v. Motorola, Inc., 138

14

F.3d 1164, 1170 (7th Cir. 1998), the material issue is not whether Price or Lacey subjectively evaluated plaintiff's applications using their checklist, or whether they rejected plaintiff's applications based on regressive movement, dishonesty in his application, or the other factors listed in Price's contemporaneously prepared background report. Rather, the material issue is whether Price, Lacey, or another party gave pretextual reasons for denying plaintiff's applications based on their knowledge of his protected political activity.

To demonstrate pretext, plaintiff must point to "some objective evidence indicating that the subjective evaluation is a mask for discrimination." See id. In other words, plaintiff must provide affirmative evidence that Lacey, Price, or Mobley were dishonest when they testified to their reasoning for rejecting plaintiff's applications. See Montgomery v. American Airlines, Inc., 626 F.3d 382, 396–97 (7th Cir. 2010). See also Yahnke v. Kane Cty., 823 F.3d 1066, 1071 (7th Cir. 2016) (noting that to show pretext, a plaintiff must provide evidence tending to prove that the employer's proffered reasons are factually baseless, not the actual motivation for the adverse action in question, or insufficient to motivate the adverse action). While the persuasiveness of an employer's non-retaliatory explanation is usually a question of fact, courts may grant summary judgment when the plaintiff does not provide evidence to rebut the employer's explanation. See Massey v. Johnson, 457 F.3d 711, 719 (7th Cir. 2006).

The court concludes that there is no objective evidence that defendants acted pretextually and would have hired plaintiff if not for his protected activity. Plaintiff does not provide evidence to demonstrate that Lacey, Price, or Mobley were dishonest when they explained the bases for their hiring recommendations. Further, he does not provide evidence to suggest that retaliatory motive was the reason for the relevant hiring decisions rather than legitimate, non-discriminatory factors. See Culver v. Gorman & Co., 416 F.3d 540, 547 (7th Cir. 2005)

(determining that an employer's explanation can be "foolish or trivial or even baseless," so long as it "honestly believed" its proffered reasons for the adverse employment action). Plaintiff may disagree with defendants' reasons for rejecting his application, but he does not provide probative evidence that retaliatory animus was the true reason for the relevant outcome, and courts do not second-guess employers' facially legitimate business decisions. See id. While plaintiff argues that he was equally, if not more, qualified than the selected applicants, he provides no evidence to show whether they engaged in similar political activity that could have influenced Rogers or the Village of Dolton to accept or deny their applications.

Defendants' last argument is that no reasonable jury could find in favor of plaintiff on Count 3 because plaintiff's political affiliation-based equal protection claim is merely rewording his First Amendment retaliation claim, which makes it incognizable under the Fourteenth Amendment. See Vukadinovich v. Bartels, 853 F.2d 1387, 1391–92 (7th Cir. 1988). Plaintiff does not counter defendants' argument that they are entitled to summary judgment on this count. Accordingly, the court grants defendants' motion for summary judgment on Count 3.

## CONCLUSION

For the reasons discussed above, the court grants defendants' motion for summary judgment on all counts (Doc. 50).

ENTER:

*Robert W. Gettleman*
**Robert W. Gettleman**
**United States District Judge**

**DATE: September 6, 2023**